IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RONALD MELTON M., JR.,[1]                      6:19-cv-01350-BR

          Plaintiff,                           OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.


**KEVIN KERR**
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, OR  97293
(503) 255-9092

          Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

_____

          [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.  Where applicable, this Court uses the same
designation for the nongovernmental party's immediate family
member.


1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**SUMMER STINSON**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3704

      Attorneys for Defendant

**BROWN, Senior Judge.**

      Plaintiff Ronald Melton M., Jr., seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

      On June 12, 2015, Plaintiff protectively filed his

2 - OPINION AND ORDER

application for DIB benefits.  Tr. 16, 178.[2]  Plaintiff alleges a
disability onset date of December 1, 2013.  Tr. 16, 178.
Plaintiff's application was denied initially and on
reconsideration.  An Administrative Law Judge (ALJ) held a
hearing on April 25, 2018.  Tr. 16, 31-58.  Plaintiff and a
vocational expert (VE) testified at the hearing.  Plaintiff was
represented by an attorney at the hearing.

On May 22, 2018, the ALJ issued an opinion in which he
found Plaintiff is not disabled and, therefore, is not entitled
to benefits.  Tr. 16-26.  Plaintiff requested review by the
Appeals Council.  On June 19, 2019, the Appeals Council denied
Plaintiff's request to review the ALJ's decision, and the ALJ's
decision became the final decision of the Commissioner.
Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On August 23, 2019, Plaintiff filed a Complaint in this
Court seeking review of the Commissioner's decision.

---

[2] Citations to the official Transcript of Record (#12)
filed by the Commissioner on March 19, 2020, are referred to as
"Tr."

3 - OPINION AND ORDER

## BACKGROUND

Plaintiff was born on December 12, 1961.  Tr. 25, 178.
Plaintiff was 55 years old on his date last insured (DLI) of
September 30, 2017.  Tr. 25.  Plaintiff received a general
education diploma (GED).  Tr. 25, 35.  Plaintiff has past
relevant work experience as a flagger, sheet-rock installer,
commercial cleaner, building-maintenance repairman, and janitor.
Tr. 24-25, 46-50.

Plaintiff alleges disability due to degenerative disc
disease, spondylosis, chronic migraines, lower-back pain,
diabetes with neuropathy, depression, claustrophobia, and
swollen heels.  Tr. 34, 59-60.

Except as noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 18-24.

## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110
(9th Cir. 2012).  To meet this burden a claimant must

4 - OPINION AND ORDER

demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance."  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's

testimony, resolving conflicts in the medical evidence, and
resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591
(9th Cir. 2009). The court must weigh all of the evidence
whether it supports or detracts from the Commissioner's
decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th
Cir. 2008). Even when the evidence is susceptible to more than
one rational interpretation, the court must uphold the
Commissioner's findings if they are supported by inferences
reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d
1047, 1051 (9th Cir. 2012). The court may not substitute its
judgment for that of the Commissioner. *Widmark v. Barnhart*, 454
F.3d 1063, 1070 (9th Cir. 2006).


### DISABILITY ANALYSIS

**I.    The Regulatory Sequential Evaluation**

At Step One the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity (SGA). 20 C.F.R. § 404.1520(a)(4)(i). *See
also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir.
2011).

At Step Two the claimant is not disabled if the

Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  20 C.F.R.
§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at
724.

At Step Three the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  20 C.F.R.
§ 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The
criteria for the listed impairments, known as Listings, are
enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed
Impairments).

If the Commissioner proceeds beyond Step Three, he must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations.  20 C.F.R.
§ 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A
'regular and continuing basis' means 8 hours a day, for 5 days a
week, or an equivalent schedule."  SSR 96-8p, at *1.  In other
words, the Social Security Act does not require complete

incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity from December 1, 2013, Plaintiff's alleged disability onset date, through September 30, 2017, his DLI.  Tr. 18.

At Step Two the ALJ found Plaintiff has the severe impairments of degenerative disc disease of the cervical spine, obesity, and hypertension.  Tr. 18.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 20.  The ALJ found Plaintiff has the RFC to perform medium work with the following limitations:  cannot climb ladders, ropes, or scaffolds; can only occasionally crawl and reach overhead with both arms; and should avoid exposure to unprotected heights.  Tr. 21.

At Step Four the ALJ concluded Plaintiff is able to perform his past relevant work as a flagger.  Tr. 24.

The ALJ made an alternative finding at Step Five that Plaintiff can perform other jobs that exist in the national economy such as hand-packager, production-assembler,

agricultural-produce sorter, and metal-furniture assembler.
Tr. 26.  Accordingly, the ALJ found Plaintiff was not disabled
from December 1, 2013, his alleged disability onset date,
through September 30, 2017, his DLI.  Tr. 26.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) failed at Step
Two to find Plaintiff's other impairments severe; (2) failed to
provide legally sufficient reasons for rejecting the medical
opinions of Raymond Baculi, M.D., Plaintiff's treating
physician, H. Ge, M.D., an examining physician, and state-agency
physicians Mary Ann Westfall, M.D., and Neal Berner, M.D.;
(3) failed to provide legally sufficient reasons for discounting
Plaintiff's subjective symptom testimony; (4) failed to provide
legally sufficient reasons for rejecting the lay-witness
testimony of Shannon Johnson, Plaintiff's fiancé; and (5) found
at Step Four that Plaintiff could perform his past relevant work
as a flagger and alternatively at Step Five that Plaintiff could
perform other work that exists in significant numbers in the
national economy.

I.    **The ALJ did not err at Step Two in his analysis of Plaintiff's impairments.**

Plaintiff contends the ALJ erred at Step Two when he failed to identify Plaintiff's degenerative disc disease with chronic low-back and right-shoulder pain, diabetes, migraine headaches, and depression as severe impairments.

The Commissioner, in turn, contends the ALJ found Plaintiff has other severe impairments, and, therefore, the ALJ ultimately resolved Step Two in Plaintiff's favor.  Thus, according to the Commissioner, any failure by the ALJ to find and to include as severe the impairments that Plaintiff identifies does not prejudice Plaintiff.  *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

A.    **Standards**

The inquiry for Step Two is a *de minimis* screening device to dispose of groundless claims.  *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)(Step Two inquiry intended to identify claimants whose medical impairments are so slight that it is unlikely they would be found disabled).  *See also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)(Step Two impairment "may be found not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an

individual's ability to work.")(emphasis in original).

The claimant bears the burden to provide medical evidence to establish at Step Two that he has a severe impairment.  20 C.F.R. § 404.1512.

At Step Two the ALJ must consider the combined effect of all the claimant's impairments on his ability to function without regard to whether each impairment is sufficiently severe.  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.2003).  *See also Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir.1996); 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 416.923.

If the ALJ determines a claimant is severely impaired at Step Two, the ALJ continues with the sequential analysis and considers all of the claimant's limitations.  SSR 96-9p, available at 1996 WL 374184 (July 2, 1996).  Step Two is "merely a threshold determination of whether the claimant is able to perform his past work."  *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).  If an ALJ fails to consider limitations imposed by an impairment at Step Two but considers them at a later step in the sequential analysis, any error at Step Two is

harmless.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).
*See also Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

### B.  Analysis

As noted, at Step Two the ALJ found Plaintiff has the
severe impairments of degenerative disc disease of the cervical
spine, obesity, and hypertension.  Tr. 18.  Based on these
impairments, the ALJ assessed Plaintiff's RFC as limited to
medium work with some exertional limitations.  Tr. 21.

The ALJ concluded, however, Plaintiff's other
allegations of severe impairments are, in fact, only symptoms,
and the ALJ found there are not any medical signs or laboratory
findings to support the existence of these conditions.  Tr. 19.
"Although the regulations provide that the existence of a
medically determinable physical or mental impairment must be
established by medical evidence consisting of signs, symptoms,
and laboratory findings, the regulations further provide that
under no circumstances may the existence of an impairment be
established on the basis of symptoms alone."  *Ukolov v.
Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).

Here although Dr. Ge diagnosed Plaintiff with
degenerative joint disease in his consultative examination, the

13 - OPINION AND ORDER

ALJ found Dr. Ge's examination did not show any "x-rays, few
complaints, no neurological signs, no altered gait, no positive
straight leg raise, and no evidence of significant weakness in
the right shoulder." Tr. 19. Although Dr. Baculi indicated in
his report that Plaintiff has diabetic neuropathy, the ALJ noted
Plaintiff's medical records showed he had normal sensation.
Tr. 19, 327, 352. In his application for benefits Plaintiff
also alleged his migraine headaches were a severe impairment.
The ALJ, however, found Plaintiff's medical records did not
indicate any complaints nor treatment for this condition.
Tr. 19, 335. Accordingly, the ALJ concluded Plaintiff's other
alleged impairments resulted in no more than "*de minimis*
limitations*" on his ability to perform work-related activities.
Tr. 20.

        In addition, the ALJ found all of Plaintiff's
allegations of severe impairments were not supported by the
record or Plaintiff's activities. The ALJ, however, concluded
Plaintiff had severe impairments of degenerative disc disease of
the cervical spine, obesity, and hypertension. The ALJ,
therefore, resolved Step Two in favor of Plaintiff, and the fact
that the ALJ did not find all of the impairments severe that

were alleged by Plaintiff does not prejudice Plaintiff. *See*
*Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017)(Step Two
is a threshold determination not meant to identify all
impairments, and a failure to identify all severe impairments is
harmless error).

Accordingly, the Court concludes on this record that
the ALJ did not err at Step Two because he found Plaintiff has
the severe impairments of degenerative disc disease of the
cervical spine, obesity, and hypertension and the fact that he
did not find Plaintiff has other severe impairments was not
prejudicial.

## II.  The ALJ properly discounted the opinions of Drs. Westfall, Berner, Ge, and Baculi.

Plaintiff contends the ALJ erred when he failed to provide
legally sufficient reasons for rejecting the medical opinions of
Drs. Baculi, Ge, Westfall, and Berner.

### A.  Standards

"In disability benefits cases . . . physicians may
render medical, clinical opinions, or they may render opinions
on the ultimate issue of disability - the claimant's ability to
perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir.
2014).  "In conjunction with the relevant regulations, [courts]

have . . . developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* When contradicted, a treating or examining physician's opinion is still owed deference and will often be "entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick,* 157 F.3d at 725. "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

**B.    Analysis**

**1.    Drs Westfall and Berner**

On October 27, 2015, Dr. Westfall, a state-agency

reviewing physician, assessed Plaintiff with a light-exertional RFC.  Tr. 63, 65-67.  She opined Plaintiff can occasionally lift and/or carry 20 pounds; can frequently lift and/or carry 10 pounds; can stand and/or walk for six hours in an eight-hour workday; can sit for six hours in an eight-hour work day; and is limited in his ability to reach, handle, finger, or feel with his right hand and arm.  Tr. 66.  On March 24, 2016, Dr. Berner, another state-agency reviewing physician, agreed with Dr. Westfall's assessment.  Tr. 79-80.

The ALJ gave the opinions of Drs. Westfall and Berner "partial weight" on the ground that their opinions are inconsistent with the medical evidence and do not contain objective findings to support the light exertion or manipulative limitations stated.  Tr. 27.  For example, the ALJ noted in April 2014 Plaintiff was seen in the Emergency Department for wrist pain, but he had normal range of motion in his neck. Tr. 315.  In October 2015 when Dr. Ge examined him, Plaintiff transferred from a chair to the examination table without difficulty; sat comfortably for at least 20 minutes; walked to the examination room with normal gait; had reduced strength in his right arm and hand, but his sensation, deep tendon reflexes,

and rapid alternating movements with his hands were "within
normal limits"; and had mild tenderness in his neck, right
shoulder, and both knees, but his knees were stable.
Tr. 324-27.  In a November 2015 evaluation by a family nurse
practioner, Plaintiff's neck was tender but had full range of
motion.  Tr. 335.  In September 2016 Dr. Baculi noted Plaintiff
had decreased range of motion in his neck, but his "motor and
sensory" were grossly intact and his gait was normal.  Tr. 351-
52.

        On this record the Court concludes the ALJ did not err
when he discounted the opinions of Drs. Westfall and Berner
because the ALJ provided legally sufficient reasons supported by
substantial evidence in the record for doing so.

            **2.    Dr. Ge**

        On October 10, 2015, Dr. Ge performed a physical
evaluation of Plaintiff.  Tr. 323-28.  Dr. Ge opined Plaintiff
can occasionally lift/push 20 pounds; can frequently lift/push
10 pounds; can stand and walk for four hours; can sit for up to
six hours; can frequently reach overhead, reach forward, handle,
finger, and feel with his right arm; and does not have any
limitations with his left arm.  Tr. 327-28.

The ALJ gave Dr. Ge's opinion "little weight" on the ground that his examination did not reflect the abnormalities expected for a light exertional RFC.  Tr. 23.  As noted, when Dr. Ge examined him, Plaintiff transferred from a chair to the examination table without difficulty; sat comfortably for at least 20 minutes; walked to the examination room with normal gait; had reduced strength in his right arm and hand, but his sensation, deep tendon reflexes, and rapid alternating movements with his hands were within normal limits; and had mild tenderness in his neck, right shoulder, and both knees, but his knees were stable.  Tr.  324-27.

The ALJ also pointed out the fact that Plaintiff was seen at the Salem Hospital Emergency Department in April 2014 for wrist pain.  Tr. 314.  The records showed Plaintiff did not have any neck or back pain, had normal range of motion in his neck, and was negative for numbness.  Tr. 315.  In November 2015 Plaintiff was examined by Esther Brown, FNP, at the Salem Clinic.  Tr. 333-36.  FNP Brown noted Plaintiff did not have any dizziness, headaches, numbness or tingling, limb weakness, difficulty walking, lumbar radicular symptoms, or cervical radicular symptoms.  Tr. 335.

On this record the Court concludes the ALJ did not err when he discounted the opinions of Dr. Ge because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

### 3.    Dr. Baculi

On April 5, 2018, Dr. Baculi, Plaintiff's treating physician, provided a Medical Source Statement.  Tr. 357-59. Dr. Baculi noted Plaintiff's conditions included cervical spondylosis, diabetes, and diabetic neuropathy.  Tr. 357. Dr. Baculi opined Plaintiff can occasionally lift/carry up to ten pounds; can frequently lift/carry less than ten pounds; can stand/walk for five minutes at one time; can stand/walk for two hours in an eight-hour workday; can sit for 15 minutes at one time; and can sit for four hours in an eight-hour workday. Tr. 358.  He also opined Plaintiff has the limited ability to push and/or pull in his upper and lower extremities; can occasionally balance, reach overhead, reach to shoulder height, handle, finger, and feel; and can never climb, stoop, bend, kneel, crouch, or crawl.  Tr. 358.

The ALJ gave "little weight" to Dr. Baculi's opinion on the ground that his "restrictive" opinion is not supported by

the medical records, including his own treatment notes.  Tr. 24.

For example, in November 2015 Plaintiff was examined by Esther

Brown, FNP, at the Salem Clinic.  Tr. 333-36.  FNP Brown noted

Plaintiff did not have any dizziness, headaches, numbness or

tingling, limb weakness, difficulty walking, lumbar radicular

symptoms, or cervical radicular symptoms.  Tr. 335.  Plaintiff

reported chronic neck pain, but an examination showed tenderness

to palpation with full range of motion.  Tr. 336.  In September

2016 Plaintiff was again seen by Dr. Baculi.  Tr. 351-52.

Although Plaintiff had decreased range of motion in his neck,

his "motor and sensory" were intact and his gait was normal.

Tr. 352.  Dr. Baculi diagnosed Plaintiff with "spondylosis of

the cervical region without myelopathy or radiculopathy" and

requested x-rays of Plaintiff's cervical spine.  Tr. 352.

        On this record the Court concludes the ALJ did not

err when he discounted the opinions of Dr. Baculi because the

ALJ provided legally sufficient reasons supported by substantial

evidence in the record for doing so.

    In summary, the Court concludes on this record that the ALJ

properly discounted the opinions of Drs. Westfall, Berner, Ge,

and Baculi and provided legally sufficient reasons supported by

substantial evidence in the record for doing so.

**III. The ALJ did not err when he discounted Plaintiff's testimony.**

Plaintiff contends the ALJ erred when he failed to provide legally sufficient reasons for discounting Plaintiff's subjective symptom testimony.

**A.    Standards**

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show her "impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof."

*Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)(same). General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B.  Analysis**

Plaintiff testified at the hearing before the ALJ that he has neuropathy in his hands and feet and has a hard time standing on his feet for any significant amount of time. Tr. 22. Plaintiff stated he has neck pain "all the time and his back pain is worse." Tr. 22. Plaintiff testified he lies down a lot because of his feet; he goes to the store, but he has a hard time walking through the store; and he can stand on his

feet for 20-to-30 minutes.  Tr. 22.

       The ALJ discounted Plaintiff's subjective symptom
testimony on the grounds that Plaintiff's allegations are
inconsistent with the medical records and with Plaintiff's
activities of daily living.  Tr. 22.  For example, the ALJ noted
there is not any evidence in the medical records of Plaintiff
complaining to his doctors regarding neuropathy in his hands and
feet that affect his ability to stand or to walk.  Tr. 22.
Although Plaintiff claimed disability beginning December 1,
2013, he did not seek any treatment from 2007 through 2014.
Tr. 22.  In April 2014 Plaintiff went to the emergency
department for a wrist injury, but he denied any neck pain, back
pain, or numbness.  Tr. 22, 315.

       The ALJ also found Plaintiff's "high-functioning"
activities of daily living do not support his symptom testimony.
Tr. 22.  For example, Plaintiff helps with light housework such
as doing dishes and taking out the garbage, he can prepare
meals, he shops, he was able to drive before losing his license,
he rides his bike twice a week, he cares for himself
independently, and he is able to handle his finances.  Tr. 22-
23, 236-38, 324.


24 - OPINION AND ORDER

On this record the Court concludes the ALJ did not err when he discounted Plaintiff's subjective symptom testimony because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**IV.  The ALJ did not err when he discounted the lay-witness testimony of Shannon Johnson, Plaintiff's fiancé.**

Plaintiff contends the ALJ erred when he failed to provide legally sufficient reasons for rejecting the lay-witness testimony of Shannon Johnson, Plaintiff's fiancé.

**A.    Standards**

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006).  Germane reasons for discrediting a lay-witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). *See also Williams v. Astrue*,

493 F. App'x 866 (9th Cir. 2012).

   **B.   Analysis**

        On December 18, 2015, Shannon Johnson, Plaintiff's
fiancé, provided a Third-Party Function Report.  Tr. 226-33.
Johnson stated Plaintiff wakes up daily in a lot of pain; does
not get out of bed "too often"; can only lift 15 pounds; cannot
stand more than ten minutes; can only walk two to three blocks;
and has problems squatting, bending, reaching, sitting,
kneeling, climbing stairs, and completing tasks.  Tr. 226-29,
231.  Johnson noted Plaintiff "doesn't deal with crowds well,"
but he is able to go to the store alone and to use public
transportation.  Tr. 228-29.  She also noted Plaintiff can
handle money and is able to follow instructions "just fine."
Tr. 229, 231.

        The ALJ noted Johnson lived with Plaintiff at the time
of her report, and, therefore, she was thoroughly familiar with
his functioning.  Tr. 24.  The ALJ, however, gave Johnson's
statement "little weight" on the grounds that there was not any
evidence in the record to support her statements and that
Johnson contradicted herself when she stated Plaintiff could not

deal with crowds but was able to use public transportation and go to the store alone.  Tr. 24.

Johnson's statements are consistent with Plaintiff's testimony regarding his symptoms.  As noted, the Court has concluded the ALJ provided legally sufficient reasons supported by substantial evidence in the record for discounting Plaintiff's testimony.  For the same reasons, the Court concludes on this record that the ALJ did not err when he discounted the lay-witness testimony of Plaintiff's fiancé because the ALJ provided germane reasons for doing so.

**V.    The ALJ did not err at Step Four or Step Five.**

Plaintiff contends the ALJ erred at Step Four when he found Plaintiff could perform his past relevant work or, in the alternative, at Step Five when he found Plaintiff could perform other work that exists in significant numbers in the national economy.  Plaintiff specifically contends the ALJ provided an incomplete hypothetical to the VE that did not include all of Plaintiff's limitations.

**A.    Standards**

At Step Four the claimant is not disabled if the

Commissioner determines the claimant retains the RFC to perform work he has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.  The burden falls on the claimant to establish that he cannot perform his past relevant work.  *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).

If the claimant is unable to perform his past relevant work, the Commissioner must determine at Step Five whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1).

**B.  Analysis**

The ALJ determined Plaintiff has the RFC to perform

medium work and concluded Plaintiff could perform his past
relevant work as a flagger.  Tr. 24-25.  The ALJ also made an
alternative finding at Step Five and, based on Plaintiff's age,
education, work experience, and RFC, identified other jobs that
existed in significant numbers in the national economy that
Plaintiff could perform such as hand-packager, production
assembler, agricultural-produce sorter, and metal-furniture
assembler.  Tr. 25-26.  The ALJ's determination was based on the
testimony of the VE.  Tr. 25, 54.  Accordingly, the ALJ
concluded Plaintiff was not disabled.  Tr. 26.

　　　　Plaintiff, however, contends the ALJ failed to include
in his hypothetical to the VE all of Plaintiff's limitations
supported by the medical evidence, his subjective symptom
testimony, and the lay-witness testimony.  As noted, the Court
has determined the ALJ properly evaluated the medical evidence,
provided legally sufficient reasons for discounting Plaintiff's
subjective complaints about his symptoms, and provided germane
reasons for discounting the lay-witness testimony of Plaintiff's
fiancé.

　　　　Accordingly, the Court concludes the ALJ did not err
at Step Four or Step Five when he did not include limitations

based on such testimony in his hypothetical posed to the VE.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 19th day of October, 2020.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States Senior District Judge